UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH E. FAIRCHILD,

Plaintiff,

v.

CHASE HOME FINANCE, LLC, *et al.*,

Defendants.
______________________________________/

Case No. 1:12-cv-723

HON. JANET T. NEFF

**OPINION**

Pending before the Court in this removed case are the motions for judgment on the pleadings filed by Defendants Chase Home Finance, LLC (Chase) and Ocwen Loan Servicing LLC (Ocwen) (Dkts 88 & 91). Plaintiff filed a collective response to the motions (Dkt 96), to which Ocwen (Dkt 92) and Chase (Dkt 94) each filed a reply. Having reviewed the parties' written submissions and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. See W.D. Mich. LCivR 7.2(d). For the reasons discussed herein, the Court grants both motions.

## I. BACKGROUND

As recounted in the pleadings, Plaintiff resides in Delton, Michigan (Dkt 29, 2d Amend. Compl. at 2). Since 1979, Plaintiff and his wife (Patty Fairchild) owned their Delton home ("the home") as tenants by the entirety (*id.*). Patty Fairchild died in March 2011 (*id.*). Plaintiff alleges that at that time, he believed that the balance on their mortgage loan was approximately $30,000 (*id.*). However, not more than a few weeks after his wife passed away, Plaintiff noticed that Chase

was drawing money from his bank account (*id.*). Going through some of his wife's old mail, Plaintiff discovered that Chase was claiming his deceased wife took out a loan for approximately $80,000 and that Chase claimed a mortgage on the home for that amount (*id.*). According to Plaintiff, any corresponding loan that Patty Fairchild entered into does not bear his signature and accordingly, any mortgage that Chase placed on his home is void ab initio under Michigan law (*id.*). Plaintiff alleges that he sent letters to Chase indicating that his wife had died, that he had no knowledge of the alleged loan and had never authorized the mortgage on his home, and demanding that Chase remove the mortgage (*id.*). Chase allegedly responded by sending more letters addressed to the decedent, threatening default and foreclosure, and demanding that Plaintiff assume the mortgage loan with the threat of losing his home if he did not (*id.* at 3).

In April 2012, Plaintiff filed a Complaint in state court against the following four defendants:

1. BNC Mortgage, Inc. (BNC), which Plaintiff alleges "claims a mortgage interest" in the home (Compl., Dkt 1-1 at ¶ 2);

2. Mortgage Electronic Registration Systems, Inc. (MERS), which Plaintiff alleges is acting as "a nominee for Lender and Lender's successors and assigns" (*id.* at ¶ 3);

3. Chase, which Plaintiff alleges either "claims an interest" in the home or "at all relevant times to this lawsuit was acting as servicer for BNC or its successors or assigns" (*id.* at ¶ 4); and

4. Ocwen Loan Servicing, LLC (Ocwen), which Plaintiff alleges was "assigned the servicing rights to BNC's alleged mortgage loan" (*id.* at ¶ 5).

Plaintiff presented the following eight claims:

I. Invalid Mortgage Pursuant to Michigan Law, MICH. COMP. LAWS § 600.2907a;

II. Slander of Title, MICH. COMP. LAWS § 600.2907a;

III. Quiet Title, MICH. COMP. LAWS § 600.2932(1);

IV. Negligent Infliction Emotional Distress;

V. Chase's Violation of the Michigan Occupational Code, MICH. COMP. LAWS § 339.915(e) & (n);

VI. Chase's Violation of the Michigan Regulation Collection Practices Act, MICH. COMP. LAWS § 445.252(e) & (n);

VII. Ocwen's Violation of the Michigan Occupational Code, MICH. COMP. LAWS § 339.915(e) & (n); and

VIII. Ocwen's Violation of the Michigan Regulation of Collection Practices Act, MICH. COMP. LAWS § 445.252(e) & (n).

On July 11, 2012, MERS removed the case to this Court based on diversity jurisdiction, 28 U.S.C. § 1332 (Dkt 1, Notice of Removal ¶ 4). On August 8, 2012, Plaintiff filed a First Amended Complaint (Dkt 14), apparently only to alter Count IV from "Negligent" Infliction of Emotional Distress to "Intentional" Infliction of Emotional Distress.

With leave of Court, Plaintiff filed a Second Amended Complaint on October 24, 2012 (Dkt 29). In his Second Amended Complaint, Plaintiff eliminated BNC as a defendant but added U.S. Bank National Association (U.S. Bank) as "Trustee for Structured Asset Investment Loan Trust," which Plaintiff alleges claims a mortgage interest in the home (*id.* ¶ 2). U.S. Bank answered the Second Amended Complaint (Dkt 40) and asserted a counterclaim against Plaintiff, alleging:

I. Declaratory Judgment Regarding Validity of Mortgage;

II. Imposition of an Equitable Mortgage; and

III. Unjust Enrichment

(Dkt 41). According to U.S. Bank, Plaintiff duly executed the mortgage on February 10, 2005 and has benefitted, directly and indirectly, from the loan proceeds (*id.*). The parties stipulated to

dismissing MERS on March 11, 2013 (Dkt 56), leaving Chase, Ocwen and U.S. Bank as the named party defendants in this case.

The Court conducted a pre-motion conference with counsel in March 2014, at which time Plaintiff's counsel clarified on the record that Plaintiff alleges Counts I through III against U.S. Bank, alleges Counts II through VI against Chase, and alleges Counts VII and VIII against Ocwen (Dkts 81 & 82). Following the pre-motion conference, this Court issued an Order permitting the parties to brief the dispositive motions proposed by Chase and Ocwen (Dkt 82). On June 23, 2014, Chase filed its "Motion for Judgment on the Pleadings" (Dkt 88). On June 24, 2014, Ocwen filed its "Motion to Dismiss pursuant to FED. R. CIV. P. 12(c)" (Dkt 91). Plaintiff filed a collective response to the motions (Dkt 96), to which Ocwen (Dkt 92) and Chase (Dkt 94) each filed a reply.

## II. ANALYSIS

### A. Motion Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). On a Rule 12(c) motion, the court must take "all well-pleaded material allegations of the pleadings of the opposing party ... as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). To survive dismissal, a complaint must contain enough facts to establish a "plausible," as opposed to merely a "possible," entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion

to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

This Court applies state law in accordance with the controlling decisions of the state supreme court. *See Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citing *Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996)). If the state supreme court has not yet addressed the issue presented, then the Court must predict how the court would rule by looking to all the available data. *See id.* "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan supreme court would decide otherwise." *Id.* (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995)).

## B. Discussion

Defendant Chase moves for judgment on the pleadings under FED. R. CIV. P. 12(c) on Counts II through VI, the counts in which it is named. Defendant Ocwen seeks judgment on the pleadings under Rule 12(c) for dismissal of Counts VII and VIII, the two counts in which it is named. The Court will examine the parties' respective arguments relative to each count.

### 1. *Slander of Title* (Count II)

In Count II, Plaintiff alleges that BNC recorded a mortgage on his property with the Barry County Register of Deeds on February 2005; that the alleged mortgage was assigned to U.S. Bank on or about March 23, 2012; and that Chase acted as servicer of the loan (Dkt 29, 2d Amend. Compl. ¶¶ 54-57). Plaintiff alleges that he never consented, in writing or otherwise, to the placement of the mortgage on his property, and that the mortgage rendered his property unmarketable (*id.* ¶¶ 58-59). Plaintiff alleges that Chase "filed the mortgage falsely, with the intent to harass and/or intimidate,"

ignored his correspondence, threatened to hold him in default and foreclose on the mortgage, and failed to disclose the assignment of the alleged mortgage (*id.* ¶ 62).

To prove slander of title under the common law, a claimant must show "falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *Fed. Nat. Mortgage Ass'n v. Lagoons Forest Condo. Ass'n*, 852 N.W.2d 217, 223 (Mich. Ct. App. 2014) (quoting *B & B Investment Group v. Gitler*, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998)). "The same three elements are required in slander of title actions brought under MICH. COMP. LAWS § 565.108." *Id.* *See* MICH. COMP. LAWS § 565.108 (providing that "[n]o person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land").

"[T]he crucial element is malice." *Lagoons Forest, supra* (quoting *Gehrke v. Janowitz*, 223 N.W.2d 107, 109 (Mich. Ct. App. 1974)). A slander-of-title claimant is required to show some act of express malice by the defendant, which "implies a desire or intention to injure." *Id.* (quoting *Glieberman v. Fine*, 226 N.W. 669, 670 (Mich. 1929)). "Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Id.* (quoting *Stanton v. Dachille*, 463 N.W.2d 479, 486 (Mich. Ct. App. 1990) (Neff, P.J.)).

In support of judgment on the pleadings in its favor, Chase asserts that the only "fact" Plaintiff alleges in support of his slander-of-title claim is the recording of the mortgage (Dkt 89 at 9). Chase emphasizes that the recorded mortgage does not mention Chase or any related entity, only BNC, MERS and Michigan Title Company (*id.*). Chase also argues that Plaintiff's references to letters or threats that were not recorded cannot be considered a "slander on title" (*id.* at 10).

Plaintiff responds that he has stated a claim for slander of title where Chase "had knowledge as of April 11, 2011 that Mrs. Fairchild had passed away, yet continued to send letters addressed to the deceased Mrs. Fairchild for almost a year" (Dkt 96 at 11). Plaintiff asserts that Chase "cannot provide any explanation for its misconduct and should be given an adverse inference it acted with malice" (*id.* at 12, relying on *Gipson v. Belvedere Const., Inc.*, No. 296765, 2011 WL 2651866 (Mich. Ct. App. July 7, 2011), and *Colyer v. Fed. Home Loan Mortgage Corp.*, No. 13-10425, 2014 WL 1048009 (E.D. Mich. Mar. 18, 2014)).

In *Gipson,* 2011 WL 2651866, at *4, the Michigan court of appeals determined that the trial court did not clearly err in finding malice where the evidence presented at trial demonstrated that the defendants were "repeatedly informed that the mortgage was paid off, yet continued their collection efforts, contributed to the showing of malice." In *Colyer*, 2014 WL 1048009, at *7, relying on *Gipson*, the district court observed that in the mortgage foreclosure context, the elements of a slander of title claim are met "where defendants falsely represented that the plaintiff defaulted when the plaintiff had never defaulted and where the trial court drew an adverse inference that the defendants acted with malice where the defendants did not testify or come forward with any explanation for their actions." The district court nonetheless determined that dismissal of the claim in *Colyer* was appropriate because the plaintiff had not pleaded facts sufficient to support either the falsity or malice elements. *Id.*

Here, too, the Court agrees with Chase that Plaintiff has not pleaded facts sufficient to support either the falsity or malice elements of a slander of title claim. Taking all well-pleaded material allegations of Plaintiff's pleadings as true, the allegations do not support Plaintiff's claim that Chase knowingly recorded a document or published a false matter with the intent to harass or

intimidate. Specifically, even assuming that Plaintiff's wife forged his signature to the mortgage upon which Chase's claim depends, Plaintiff's allegations do not demonstrate that Chase acted out of malice in recording or publishing matters relative to the mortgage. A plaintiff may not prevail on a slander-of-title claim if the defendant's "claim under the mortgage [or lien] was asserted in good faith upon probable cause or was prompted by a reasonable belief that [the defendant] had rights in the real estate in question." *Lagoons Forest Condo. Ass'n*, 852 N.W.2d at 223 (quoting *Glieberman*, 226 N.W. at 670). Hence, dismissal of Count II against Chase is warranted.

**2. *Quiet Title* (Count III)**

In Count III, Plaintiff alleges that he is the fee owner of the home; that U.S. Bank claims an improper ownership interest in the home as evidenced by an Assignment of Mortgage recorded in the Barry County Register of Deeds; that Chase and Ocwen, as servicers for the lender claim an interest in the mortgage; and that the mortgage was executed "in violation of the laws identified in this Complaint, and is therefore invalid" (Dkt 29, 2d Amend. Compl. ¶¶ 66-70). Plaintiff alleges that this Court should, in pertinent part, adjudge that Plaintiff owns the home in fee simple and is entitled to the quiet and peaceful possession of the home (*id.* ¶ 71).

Michigan law allows any person who claims any right, title, or interest in land—whether the person is in possession or not—to bring an action to quiet title. *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 958 (6th Cir. 2014) (citing MICH. COMP. LAWS § 600.2932); *see also* MICH. CT. R. 3.411 (Civil Action to Determine Interests in Land). The plaintiff bears the burden of proof and must make a prima facie case that he has superior title or right to the property. *Derbabian, supra* (citing *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd. Comm'n*, 600 N.W.2d 698, 700 (Mich. Ct. App. 1999); *Stinebaugh v. Bristol*, 347 N.W.2d 219, 221 (Mich. Ct.

App. 1984)). If the plaintiff makes such a showing, then the burden shifts to the defendant to prove superior right or title. *Id.* (citing *Stinebaugh*, 347 N.W.2d at 221).

In support of judgment on the pleadings in its favor, Chase points out that Plaintiff's Count III alleges only that "Chase is a servicer and (thus) claims an interest in the mortgage" (Dkt 89 at 11). Chase argues that its rights as a servicer are only a right to foreclose on the mortgage, that it does not have an interest *in the land* by virtue of being a servicer, even if it does have an interest in the mortgage (*id.*) (emphasis in original). Further, Chase points out that its servicing rights were transferred to Ocwen in April 2012, more than two months before this lawsuit was filed in June 2012 (*id.*)

Plaintiff's brief in opposition to Chase's motion includes no response to Chase's argument on the quiet title claim. Accordingly, dismissal of Count III against Chase is warranted. *See Gomery v. Continental Cas. Co.*, No. 1:13-cv-947, 2014 WL 4209648, at *4 (W.D. Mich. Aug. 25, 2014) (Neff, J.) (collecting cases from the Sixth Circuit holding that a failure to respond to an argument deems any argument on that issue waived).

**3. *Intentional Infliction of Emotional Distress* (Count IV)**

In Count IV, Plaintiff alleges, in pertinent part, that Chase "misrepresented the status of the Mortgage and loan, neglected Joseph Fairchild's letters contesting the validity of the Mortgage, but continued to send letters wrongfully addressed to his deceased wife, when Joseph Fairchild expressed his wife's death in writing, attaching her death certificate, threatening to hold her in default, foreclose on the Home, and demand Joseph Fairchild assume the alleged loan, failed to disclose to Plaintiff the Assignment of Mortgage and otherwise unlawfully threatened foreclosure and deliberately failed to remedy the mistakes when they were addressed" (Dkt 29, 2d Amend.

Compl. ¶ 74). Plaintiff alleges that the actions of Chase and its agents were "intentional or made recklessly," "extreme and outrageous," and "proximately caused Joseph Fairchild to suffer damages" (*id.* ¶¶ 75-77).

In Michigan, a plaintiff claiming intentional infliction of emotional distress (IIED) must allege (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 824-25 (6th Cir. 2012) (citing *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679, 694 (Mich. Ct. App. 2010)). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quoting *Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004)).

In Michigan, this standard is not satisfied when the plaintiff essentially claims that the defendant "breached contracts with him in various ways and foreclosed on his property." *Chungag, supra* (quoting *Ursery v. Option One Mortgage Corp.*, No. 271560, 2007 WL 2192657, at *16 (Mich. Ct. App. July 31, 2007)). "In a contractual setting, a tort claim must be based instead on the breach of a duty distinct from the contract." *Id.* (quoting *Hayley v. Allstate Ins. Co.*, 686 N.W.2d 273, 277 (Mich. Ct. App. 2004)).

In support of judgment on the pleadings in its favor, Chase emphasizes that Plaintiff does not dispute either the existence of the mortgage or that no payments were made after his wife's death (Dkt 89 at 13). Chase argues that given the admitted existence of the mortgage and the default in payments, "none of the [alleged] actions or inactions rises to the level of conduct which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society" (*id.*).

In response, Plaintiff opines that there is "no good reason why Chase acted the way that it did for a year in its threats to Mr. Fairchild" and that Chase's actions, "taken together over a year, in totality, certainly arise to the level of outrageous treatment to Plaintiff" (Dkt 96 at 13). Plaintiff emphasizes that where reasonable minds may differ, whether a defendant's conduct is so extreme and outrageous as to impose liability is a question of fact for the jury (*id.* at 12).

Plaintiff's stated opposition to dismissal of Count IV overlooks that "the extent of the distress does not matter unless the conduct itself was actionable under IIED." *See Chungag*, 489 F. App'x at 825.[1] Taking all well-pleaded material allegations of Plaintiff's pleadings as true, the allegations do not support a claim for IIED. The Court agrees that Plaintiff alleges no facts that suggest any extreme or outrageous conduct by Chase that would impose a duty on Chase that is distinct from its contractual obligations. Hence, dismissal of Count IV against Chase is warranted.

**4. *Chase's Violation of the Michigan Occupational Code and the Michigan Regulation of Collection Practices Act* (Counts V & VI)**

In Count V, Plaintiff alleges that Chase willfully violated the Occupational Code by "(a) making inaccurate, misleading, untrue, or deceptive statements and claims in communications to collect the debt (MCL 339.915(e)), by virtue of the March 7, 2012 Letter from Schneiderman & Sherman P.C., indicating it is attempting to collect a debt, and further indicating both Joseph Fairchild and Patty Fairchild were debtors. (See Exhibit 12);" and "(b) using harassing, oppressive, or abusive methods to collect the debt (MCL 339.915(n)) by virtue of the fact that Joseph Fairchild

[1]The Court also points out that Plaintiff's response brief incorrectly referenced the standard for resolving a motion for summary judgment filed under FED. R. CIV. P. 56 (Dkt 96 at 9-10), which is dependent on determining whether the movant shows that there is no genuine dispute as to any material fact, rather than an examination of the pleadings as required by a motion brought under Rule 12(c).

sent seven correspondence to Chase and its agents indicating that his wife had passed away, yet it ignored his substantive issues and continued to send letters to her, and demanded Joseph Fairchild assume the loan" (Dkt 29, 2d Amend. Compl. ¶ 83). In Count VI, Plaintiff alleges, verbatim, the same allegations from Count V as supporting his claim that Chase also willfully violated the MRCPA (*id.* ¶ 88).

Michigan has at least two statutes governing collection practices: Michigan's Occupational Code (MOC), MICH. COMP. LAWS § 339.901 *et seq*., and Michigan's Regulation of Collection Practices Act (MRCPA), MICH. COMP. LAWS § 445.251 *et seq*. *Voydanoff v. Select Portfolio Servicing, Inc.*, No. 298098, 2011 WL 6757841, at *10 (Mich. Ct. App. Dec. 22, 2011). Both acts contain nearly identical sections delineating prohibited acts to collect a debt, which include, in pertinent part, prohibiting a licensed collection agency from "[u]sing a harassing, oppressive, or abusive method to collect a debt," MICH. COMP. LAWS § 339.915 (MOC), and prohibiting a "regulated person" from "[m]aking an inaccurate, misleading, untrue or deceptive statement or claim in a communication to collect a debt," MICH. COMP. LAWS § 445.252 (MRCPA). The Michigan court of appeals has "generally observed that 'the[se] provisions ... clearly attempt to protect the debtor and the creditor from the potentially improper acts of a third-party collection agency.'" *Id.* (quoting *Asset Acceptance Corp. v. Robinson*, 625 N.W.2d 804, 806 (Mich. Ct. App. 2001)).

In support of judgment on the pleadings in its favor on Count V, Chase asserts, as a threshold matter, that its activities are not governed by the MOC inasmuch as the debt was not in default at the time Chase began servicing the loan (Dkt 89 at 16). Further, Chase points out that Michigan's statute is based upon the federal Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*, which has been construed to allow debt collectors to communicate with the spouses of a decedent debtor

(*id.* at 15, citing "Statement of Policy Regarding Communications in Connection With the Collection of Decedents' Debts," 76 FR 44915-01). Last, Chase argues that given that Plaintiff acknowledges that his name appears on the mortgage, one is left to speculate why he thinks the letter is "inaccurate, misleading, untrue or deceptive" (*id.* at 14). Chase asserts that Plaintiff has failed to show how the correspondence constitutes "harassing, oppressive or abusive methods to collect the debt"(*id.*). Chase relies on the same arguments in support of judgment on the pleadings in its favor on Count VI (*id.* at 17).

Plaintiff responds that he has stated a valid claim under the MOC inasmuch as Chase "misrepresented the legal responsibility of Joseph Fairchild" and sent correspondence that falsely indicated that "Joseph Fairchild was a debtor" (Dkt 96 at 14). Similarly, under the MRCPA, Plaintiff argues that Chase's correspondence to him "is a violation since it is wrongfully claiming that Plaintiff owes a debt to Defendant Chase and therefore is a violation" (*id.* at 15-16).

Even assuming arguendo that these acts apply to Chase and taking Plaintiff's well-pleaded material allegations as true, Plaintiff's allegations do not support his claims. The March 7, 2012 letter, addressed to both Joseph and Patty Fairchild, indicates, in pertinent part, that the loan is "in default and has been referred to our office by the mortgagee or servicer of your mortgage to institute foreclosure proceedings" and that the Fairchilds have "the right to dispute the validity of the debt," and delineates the time frame and manner for disputing the debt (Ex. 12, Dkt 29-2 at 33-34). Courts, including this one, have held that actions taken pursuant to statutorily authorized foreclosure proceedings are not harassing, oppressive, or abusive collection methods under the MRCPA. *See McDonald v. Green Tree Servicing, LLC*, No. 13-12993, 2014 WL 1260708, at *7 (E.D. Mich. Mar. 27, 2014), appeal dismissed (Sept. 11, 2014); *Frost v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 999,

1012 (W.D. Mich. 2012) (Neff, J.); *Bolone v. Wells Fargo Home Mortgage, Inc.*, 858 F. Supp. 2d 825, 837-38 (E.D. Mich.2012). Similarly, the actions alleged do not establish a plausible entitlement to relief under the MOC. Hence, dismissal of Counts V and VI against Chase is warranted.

**5. *Ocwen's Violation of the Michigan Occupational Code and the Michigan Regulation of Collection Practices Act* (Counts VII & VIII)**

In Count VII, Plaintiff alleges that Ocwen willfully violated the MOC by "(a) making inaccurate, misleading, untrue, or deceptive statements and claims in communications to collect the debt, including neglecting to disclose the Assignment of Mortgage (Exhibit 15) (MCL 339.915(e) (See Exhibit 1);" and "(b) using harassing, oppressive, or abusive methods to collect the debt (MCL 339.915(n)) by virtue of the fact that Joseph Fairchild sent correspondence to Ocwen indicating that his wife had passed away (See Exhibit 16), yet it still continued to send letters, and refused to remove the Mortgage" (Dkt 29, 2d Amend. Compl. ¶ 93). In Count VIII, Plaintiff alleges, verbatim, the same allegations from Count VII as supporting his claim that Ocwen also willfully violated provisions of the MRCPA, MICH. COMP. LAWS § 445.252(e) and (n) (*id.* ¶ 98).

Again, the MOC prohibits, in pertinent part, "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt." MICH. COMP. LAWS § 339.915(e). Also referenced in Plaintiff's Count VII is subsection (n), which prohibits "[u]sing a harassing, oppressive, or abusive method to collect a debt." *Id.* § 339.915(n).

Similarly, the MRCPA prohibits, in pertinent part, "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt,"

MICH. COMP. LAWS § 445.252(e), and "[u]sing a harassing, oppressive, or abusive method to collect a debt," *id.* § 445.252(n).

In support of judgment on the pleadings in its favor, Ocwen argues that even assuming its correspondence is governed by statute, Plaintiff fails to establish with any degree of specificity how any statements from Ocwen were inaccurate, misleading, untrue or deceptive (Dkt 91 at 11). Ocwen points out that although Plaintiff's allegations reference "statements" in the plural, Plaintiff identifies only Ocwen's April 26, 2012 correspondence to Patty Fairchild and makes no allegations as to why that correspondence violates any statutory prohibition (*id.*; Dkt 29, 2d Amend. Compl. ¶ 39; Ex. 17, Dkt 29-2 at 45). Further, Ocwen argues that Plaintiff's Second Amended Complaint contains no facts that establish that the recording of an assignment of a mortgage constitutes a statutory violation and/or that establish any legal duty on behalf of a loan servicer to advise a borrower of an assignment of a mortgage (*id.* at 11-12). Ocwen incorporates its same arguments in support of judgment on the pleadings in its favor on Count VIII (*id.* at 14).

Plaintiff responds that he has stated a valid claim under the MOC against Ocwen inasmuch as "[t]he knowledge of Defendant Chase's prior mishandling of Plaintiff's claims should be imputed to Ocwen" and "[i]t should not have been Plaintiff's obligation to reeducate Defendant Ocwen on all of the misconduct conducted by Chase" (Dkt 96 at 17). Similarly, under the MRCPA, Plaintiff argues that "Ocwen should be responsible for the imputed knowledge of Defendant Chase's misconduct while handling Joseph Fairchild's case" (*id.* at 18).

As Ocwen points out in Reply (Dkt 92 at 3), Plaintiff's response is wholly dependent on the proposition of "imputing" knowledge between servicers, a proposition for which Plaintiff has provided no authority. Further, as Plaintiff has failed to state claims against Chase under these acts,

Plaintiff's dependent claims against Ocwen concomitantly fail. Taking all well-pleaded material allegations of the pleadings of Plaintiff as true, the allegations do not support claims against Chase under either the MOC or the MRCPA. Hence, dismissal of Counts VII and VIII against Ocwen is warranted.

**III. CONCLUSION**

For the foregoing reasons, the Court grants Chase's "Motion for Judgment on the Pleadings" (Dkt 88) and grants Ocwen's "Motion to Dismiss pursuant to FED. R. CIV. P. 12(c)" (Dkt 91). Counts I through III of Plaintiff's Second Amended Complaint against U.S. Bank (Dkt 29) and U.S. Bank's Counterclaim (Dkt 41) will proceed. An Order consistent with this Opinion will enter.

DATED: February 19, 2015

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge